IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IPVENTURE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-588-RGA |
| | : | |
| ACER, INC., et al, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

---

Steven L. Caponi, Esq., BLANK ROME LLP, Wilmington, Delaware; Dorian Berger, Esq. (argued), IRELL & MANELLA LLP, Los Angeles, California, Attorneys for Plaintiff

Steven J. Fineman, Esq., Richards Layton & Finger, P.A., Wilmington, Delaware; Kimball R. Anderson, Esq. (argued), WINSTON & STRAWN, Chicago, Illinois; Attorneys for Defendant Dell Inc.

John G. Day, Esq., ASHBY & GEDDES, Wilmington, Delaware; Michael J. Engle, Esq. (argued), PERKINS COIE LLP, San Diego, California; Attorneys for Defendant ASUSTeK Computer Inc. and ASUS Computer International.

---

July **24**, 2012
Wilmington, Delaware

-1-

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court are two motions. The ASUS defendants have filed a Motion to Dismiss or, in the Alternative, to Sever and Transfer to the Northern District of California. (D.I. 65). Defendant Dell has filed a Motion to Sever and Transfer to the Western District of Texas. (D.I. 97).

On July 5, 2011, Plaintiff sued Fujitsu and Lenovo alleging infringement of two patents relating to thermal and power management for computer systems. After extensions of time, Lenovo filed a motion to dismiss on November 7. (D.I. 31). On November 28, Plaintiff filed an Amended Complaint, alleging infringement of four patents by the original defendants and Acer, Gateway, ASUS, Dell, Samsung, and Toshiba. (D.I. 36). The defendants filed motions to dismiss, which were briefed into April, and resolved on June 29, 2012. (D.I. 118). Plaintiff filed its Second Amended Complaint on July 13, 2012. (D.I. 120).

Meanwhile, ASUS and Dell filed their separate pending motions. The motions to sever present identical issues. The motions to transfer present different issues.

The severance motions themselves present two issues. The first is, which joinder rule controls, that of Federal Rule of Civil Procedure 20(a), or that of the America Invents Act – 35 U.S.C. §299, enacted effective September 16, 2011? Dell states that § 299 applies. (D.I. 98, p. 8). ASUS states that it does too. (D.I. 102, p.8 & n.14). Plaintiff states that it does not. (D.I. 93, p.15). I am inclined to think it does apply, *see* D.I. 119 (enclosing a transcript from *Softview LLC v. Apple,* Civ. Act. No. 10-389-LPS (D.Del. May 3, 2012)), but I think the outcome would be the same even if I were to accept Plaintiff's argument that Rule 20 controls.

The recent Federal Circuit authority, *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012),

-2-

expressly states that "motions to sever are governed by Federal Circuit law," and implicitly holds

that the issue of proper joinder is also governed by Federal Circuit law. *Id.* at 1354 ("joinder in

patent cases is based on an analysis of the accused acts of infringement, and this issue involves

substantive issues unique to patent law."). While the exact extent of the Federal Circuit's ruling

might be subject to debate (since the Court's holding was merely that the district court used an

erroneous standard in evaluating a motion to sever, and the Court remanded for further

proceedings using the correct standard), the application of the standard set forth suggests that

severance be granted in this case.

> The Federal Circuit held that:

> > [J]oinder is not appropriate where different products or processes are involved.
> > Joinder of independent defendants is only appropriate where the accused products or
> > processes are *the same in respects relevant to the patent*. But the sameness of the accused
> > products or processes is not sufficient. Claims against independent defendants (i.e.,
> > situations in which the defendants are not acting in concert) cannot be joined under Rule
> > 20's transaction-or-occurrence test unless the facts underlying the claim of infringement
> > asserted against each defendant share an aggregate of operative facts. To be part of the
> > "same transaction" requires shared, overlapping facts that give rise to each cause of
> > action, and not just distinct, albeit coincidentally identical, facts. The sameness of the
> > accused products is not enough to establish that claims of infringement arise from the
> > "same transaction." Unless there is *an actual link between the facts underlying each claim
> > of infringement*, independently developed products using differently sourced parts are not
> > part of the same transaction, even if they are otherwise coincidentally identical.

> > In addition to finding that the same product or process is involved, to determine
> > whether the joinder test is satisfied, pertinent factual considerations include whether the
> > alleged acts of infringement occurred during the same time period, the existence of some
> > relationship among the defendants, the use of identically sourced components, licensing
> > or technology agreements between the defendants, overlap of the products' or processes'
> > development and manufacture, and whether the case involves a claim for lost profits. The
> > district court enjoys considerable discretion in weighing the relevant factors.

*In re EMC Corp.*, 677 F.3d 1351, 1359-60 (Fed. Cir. 2012) (emphases added).

> The Seconded Amended Complaint (unlike the Amended Complaint, written before

*EMC*) makes an attempt to meet this standard (D.I. 120, ¶¶ 21-26), but, in the end, is insufficient because the allegations of commonality are painted with a broad brush and appear to be inconsequential to the critical patent issues. First, Plaintiff gives no hint in the complaint which claims of the four patents are at issue, and that lack of specificity undercuts its arguments. The patents appear to be narrow. For example, the '599 patent states that it "relates to novel techniques for providing thermal and power management for a computing device." Col. 2, ll. 43-45. Further, "[t]he present invention relates to a computing device and, more particularly, to a method and apparatus for controlling a processor's clock frequency." Col. 1, ll. 24-26. (The other patents state the same things.). It thus appears the claimed novelty involves the "method and apparatus for controlling a processor's clock frequency." The novelty is not thermal and power management. Second, the allegations relating to joinder include that the accused computers include "common components" such as "Intel microprocessors, ... cooling fans, operating systems (such as Microsoft Windows ...), [and] embedded controllers." (D.I. 120, ¶ 22). The rest of the component allegations are even more general. There is also an allegation that the infringing computers – that is, notebook computers – are "ACPI compliant," which is asserted to mean that they have "common thermal management architecture." The fact that computers generally have the same components and the same functionalities does not mean that they are "the same in respects relevant to the patent." Thus, I do not think that the allegations are sufficient to show that these computer manufacturer defendants are all properly joined, since I do not think there is an allegation that they are selling the same products or processes. I think consequently that the claims of infringement against the defendants' products do not share an aggregate of operative facts. They are all direct competitors, which also significantly counsels

-4-

against their joinder in the same case.  The only factor that Plaintiff raises that has any resonance

is its referral to the ACPI standard, but since there is no alleged connection between the standard

and the alleged infringement, I do not give it much weight.

Therefore, I will grant both severance motions.

The transfer motions have been fully briefed and orally argued.

The statutory authority for transferring the case is § 1404(a) of Title 28, which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."[1]

The burden of establishing the need for transfer is the movant's, *see Jumara v. State Farm Ins.*

*Co.*, 55 F.3d 873, 879 (3d Cir. 1995), which in this case is Dell or ASUS.  The Third Circuit has

set forth the framework for analysis:

> "[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed."

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." While there is no definitive formula or list of the factors to consider, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

> The private interests have included: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in

---

[1] The amendment to § 1404 does not apply to this case, which was filed before the effective date of the amendment.

the alternative forum).

The public interests have included: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted and numbering added).

I will analyze each defendant's motion separately.[2]

IpVenture Inc. is a California corporation with its principal and only place of business in Los Altos, California (D.I. 120, ¶ 1), which is in the Northern District of California, about 15 miles from San Jose. ASUSTeK Computer Inc. is a Taiwanese corporation with its principal place of business in Taiwan, and ASUS Computer International is a California corporation with its principal place of business in Fremont, California (*Id.*, ¶¶ 5-6), which is in the Northern District of California, about 15 miles from San Jose. ASUS Computer is a wholly-owned subsidiary of ASUSTeK.

There is no dispute that this case could have been brought against the ASUS defendants in the Northern District of California. (D.I. 66, p.15; D.I. 93, p. 17 [not arguing otherwise]).

In my view, interest (1) supports Plaintiff's position that the case should not be transferred. Interests (2) and (8), and to a lesser extent (6), support the defendants' request to transfer the case. The other interests do not add much to the balancing. The twelve interests are not exclusive, and in this case there are other considerations that I take into account.

Plaintiff has chosen Delaware as a forum. That choice weighs strongly in Plaintiff's

---

[2] At oral argument, Plaintiff's counsel agreed that the ASUS defendants had the better case for transfer. (D.I. 116, p.36).

favor, although not as strongly as it would if Plaintiff had its principal places of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'").

Defendants' preference is the Northern District of California, where ASUS Computer International is incorporated, has 93% of its employees, and where it has its principal place of business.

Although the defendants have argued in their briefing that the claim arose "if anywhere" in the Northern District of California, that argument is not really pursued, as it essentially relies upon the idea that ASUS computers are imported into the United States through California, and that California is where ASUS is located. (D.I. 66, p. 18). ASUS computers are sold throughout the United States, and I would view the claim of infringement as being one that arises wherever the computers are sold. S*ee In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Thus, this factor has no weight in the balancing.

Plaintiff is a small corporation, but it has high-powered lawyers and has sued an array of prominent defendants in this case. The defendants are substantial corporations and can litigate anywhere. They too have high-powered lawyers. Other than size, there is nothing in the record relating to "physical and financial condition." I do not think this factor significantly favors either side, and therefore I will treat it as neutral.

At this juncture, it is hard to tell who the witnesses might be. Other than the co-inventor,

who was located in New Jersey at the time of the invention, potential witnesses have not been identified with any specificity. The co-inventor is the 75-year old father of the other co-inventor, who is also a principal of Plaintiff, and thus there is every reason to believe that the father will voluntarily appear, if needed, in California or Delaware. It appears that the father is actually within the subpoena power of this Court, but, given the father's relationship to the litigation, this is not significant. Any party employees are almost certainly in either California or Taiwan. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). For Taiwanese witnesses, California is more convenient than Delaware, but neither is very convenient. There are no assertions about third party witnesses. Thus, no witnesses who would be unavailable in one location but not the other have been identified. This factor therefore adds little to the balancing.

Similarly, it is hard to tell where most of the books and records would be. The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. The records of the defendants, which are likely the most important records for this litigation, *see id.*, may be in Taiwan, which is distant from both fora. And they might be in California, which is distant from Delaware. In any event, there are no records identified as only being available in one of the two locations.[3] Thus, this factor too adds very little to the balancing. To the extent it has any marginal impact, it favors transfer.

Enforceability of the judgment is not an issue.

---

[3] While there is a paragraph in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), about "the convenience of the witnesses and the location of the books and records," I do not understand the Federal Circuit to have altered the Third Circuit's focus on the issue being not so much where the witnesses and evidence are, but whether they can be produced in court.

Practical considerations that could make the trial easy, expeditious, or inexpensive weigh in favor of transfer. This is a business dispute between three corporations with no connection to Delaware, but with extensive connections to the Northern District of California. The parties are represented by California counsel (albeit from southern California). The costs of a trial in California would be significantly less. With the exception of the co-inventor, any conceivable existing witness (that is, not including expert witnesses yet to be retained) will find trial in California easier. Likewise, while Plaintiff has produced relevant and interesting historical evidence about the time to trial in patent cases in this District and the Northern District of California (D.I. 94, Exh. 12, pp. 18-19), I am not persuaded that it impacts this decision. It may be that historical evidence is that patent trials get to trial in just over two years in this District. I wonder how much that is influenced by the numerous ANDA cases that go to trial in Delaware (which are forced to trial on a faster pace than other patent cases). In addition, this case, which has now been pending for more than a year, has made almost no progress, and clearly will not be able to be scheduled for trial for at least another two years. I am not persuaded that it would be anything other than a guess as to which District would offer the better chance for a quicker resolution. *See id.* at 1347. I would estimate that trial in the Northern District of California would be hundreds of thousands of dollars less expensive, due to its more convenient location and the lack of need for local counsel. Thus, this factor favors transfer.

The relative administrative difficulty due to court congestion, to the extent that is different than the time to trial concern addressed above, is not argued, and is therefore neutral.

The "local controversy" consideration is also inapplicable here. *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 207 (D.Del. 1998).

-9-

The public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes. That concern is irrelevant since Plaintiff and the defendants are not Delaware corporations. This factor is thus neutral.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

Other than Plaintiff's choice to sue in Delaware, there is only one conceivable factor that makes any sense as to why this case should not be transferred to California. That is the concurrent litigation on the same patents on similar technology against the codefendants, who represent a significant portion of the rest of the computer manufacturing industry. (D.I. 93, pp. 19-20). That litigation has not progressed at all, and thus I have no particular knowledge of the patents or the technology, but I will likely be gaining that in the near future. I believe that is a legitimate concern to factor into the analysis. *See In re Google*, 2011 WL 772875, at *2 (Fed. Cir. March 4, 2011).[4]  Certainly, if I already had some experience with the patents, it would be an important legitimate concern. *See In re Verizon Business Network Services, Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). Thus, the "co-pending litigation" weighs against transfer, but not that strongly.

I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011).[5]

_____

[4] I do not put too much stock in this "non-precedential" decision. On mandamus review, the Court twice states that the district court's decision not to sever and transfer one of a multitude of defendants was not an abuse of discretion. The Federal Circuit does not use mandamus to review for abuses of discretion. Rather, it reviews for "clear abuse of discretion or usurpation of judicial power." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222 (Fed. Cir. 2011). Thus, the failure to grant mandamus is not (or, at least, should not be) the same thing as holding that the District Court did not abuse its discretion in denying a transfer motion.

[5] The Federal Circuit's numerous transfer cases arising from the Fifth Circuit are not controlling as the Federal Circuit interprets the law of the Circuit in which the District Court sits. *See In re Link_A_Media*, 662 F.3d at 1223. The law of the two Circuits in regard to how to

Defendant cited the case extensively and relied upon it in its Opening Brief. (D.I. 66). Plaintiff did not cite or discuss it at all. (D.I. 93). It is hard for me to think that *In re Link_A_Media* is anything other than controlling. There are two differences of significance between this case and *In re Link_A_Media*. One difference is that the defendant in *In re Link_A_Media* was a Delaware corporation, whereas here none of the parties is a Delaware corporation. *See In re Altera Corp.*, Misc. Docket No. 121, slip. op. at 4 (Fed. Cir. July 20, 2012) (denying mandamus and distinguishing *In re Link_A_Media* when all of the parties were Delaware corporations). This difference further supports the defendants' request to transfer. The other difference is that there are the co-pending cases, which implicate a question of judicial efficiency that was not present in *In re Link_A_Media*. This difference further supports Plaintiff's request to deny transfer. Taking these two differences into account, and considering all of the *Jumara* factors, I think the case against the ASUS defendants should be transferred to the Northern District of California.

Under Third Circuit law, considerable deference is given to the plaintiffs' choice of forum. Since there is little beyond Plaintiff's choice of forum – which is less compelling than usual – to suggest that transfer should be denied, I will therefore grant the defendants' motion to transfer.

An appropriate order will be entered.[6]

---

conduct a transfer analysis is different in a number of regards. Of greatest relevance, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the [transfer] analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). As noted earlier, the Third Circuit treats the plaintiff's choice as a factor of "paramount importance."

[6] The ASUS defendants also moved to dismiss for lack of personal jurisdiction. In view of 28 U.S.C. § 1406, were I to find a lack of personal jurisdiction, I would still transfer the case

I now consider Dell's motion to transfer.

There is no dispute that the patent infringement action against Dell could have been brought in the Western District of Texas, as its principal place of business is in Round Rock, Texas (D.I. 99, ¶ 2), which is in that District.

In my view, interest (1) supports Plaintiff's position that the case should not be transferred. Interests (2) and (8), and to a lesser extent (5) and (6), support the defendant's request to transfer the case. The other interests do not add much to the balancing.

Plaintiff has chosen Delaware as a forum. That choice weighs strongly in Plaintiff's favor, although not as strongly as it would if Plaintiff had its principal places of business (or, indeed, any place of business) in Delaware. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) ("plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request"); *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287, 289 (D.Del. 1986) (plaintiff's choice of forum not as compelling if it is not plaintiff's "'home turf'").

Defendant's preference is the Western District of Texas, where it has its principal place of business. Clearly, defendant's decision to seek to litigate in that District is rational and legitimate.

Although the defendant has argued in its briefing that the claim did not arise in Delaware (D.I. 98, p.16), and that the Dell products that are alleged to infringe were developed in the Western District of Texas, I think the claim that is relevant here is Plaintiff's claim that Dell's products, which are sold and offered for sale all over the United States, including Delaware (D.I.

to the Northern District of California. Thus, I do not decide the jurisdictional question.

-12-

110, Exh. 7), infringed its patent. Thus, I think the claims arise in every judicial district. *See In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). Consequently, this factor has no weight in the balancing.[7]

Plaintiff is a small corporation, but it has high-powered lawyers and has sued an array of prominent defendants in this case. The defendant is a corporation doing business world-wide and can litigate anywhere.[8] They too have high-powered lawyers. Other than size, there is nothing in the record relating to "physical and financial condition." I do not think this factor significantly favors either side, and therefore I will treat it as neutral.

At this juncture, it is hard to tell who the witnesses might be. It seems likely that some number of the non-expert witnesses will be employees of Dell. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."). Dell has specifically named various of its employees (located in Texas) who are "potential witnesses." (D.I. 99, ¶ 5). While I do not in any way question the good faith of the proffer (which is sworn to), or that the employees have relevant knowledge (which, given their job titles, is likely), my experience to date suggests that it is unlikely that the identified employees will end up testifying in person (or even by deposition). Dell has further proffered the names of three former employees "who have knowledge of Dell's thermal management architecture" and who appear to continue to live near Austin. (*Id.*, ¶ 6). The

---

[7] Of course, the fact that Dell's engineers and marketers for these products are in Texas is not irrelevant. It merely is analyzed as part of a different factor.

[8] The fact that Dell has often been sued in this Court, and has usually not moved to transfer the case elsewhere demonstrates that it has the capacity to litigate here. It does not, however, constitute any sort of a waiver of the right to seek transfer in this case or any other case in which it believes transfer is warranted.

-13-

necessity of these individuals being involved in the litigation is suggested with very little force. Plaintiff has identified the co-inventor, who was located in New Jersey at the time of the invention, as a potential witness, but has not identified any others. The co-inventor is the 75-year old father of the other co-inventor, who is also a principal of Plaintiff, and thus there is every reason to believe that the father will voluntarily appear, if needed, in Texas or Delaware. It appears that the father is actually within the subpoena power of this Court, but, given the father's relationship to the litigation, this is not significant. Unfortunately, a patent case is not like a car accident, where the fact witnesses – or likely trial witnesses – can be identified from day one. All that can be concluded about likely trial witnesses is that more of them are more likely to be in the Western District of Texas than in Delaware or within 100 miles of Wilmington. If there is a trial,[9] and if there are one or more necessary witnesses who will only testify if subpoenaed, there is a statistically greater likelihood that such witnesses would be within the subpoena power of the Western District of Texas than within the subpoena power of the District of Delaware. No likely witnesses who would be unavailable in one location but not the other have been identified. The odds, however, are that such people exist, and that they are in the Western District of Texas. Thus, this factor very slightly favors transfer.

Similarly, it is hard to tell where most of the books and records would be (other than Dell's). The only identified holders of records are the parties, and their records will be able to be produced in whichever forum has the case. The records of Dell relating to its accused products, which are most likely the most important records for this litigation, *see In re Genentech*, 566

---

[9] As noted in *Intellectual Ventures I LLC v. Altera Corp.*, 2012 WL 297720, \*10-11 (D.Del. Jan. 24, 2012), *aff'd sub nom. In re Altera Corp.*, Misc. Docket No. 121 (Fed. Cir. July 20, 2012), a trial is an unlikely event.

F.3d at 1345, are in the Western District of Texas, and not in Delaware. In any event, there are no records identified as only being available for trial in one of the two locations. Thus, this factor favors transfer, but is of marginal weight given that it is likely that Dell's records can be produced at trial wherever trial is held.

Enforceability of the judgment is not an issue.

Practical considerations that could make the trial easy, expeditious, or inexpensive modestly favor transfer. A trial in Delaware is very likely to be less easy and more expensive for Dell than a trial in the Western District of Texas, because of travel considerations and expenses for witnesses. A trial in the Western District of Texas is likely to be about as costly for Plaintiff as a trial in Delaware. On balance, the overall cost and inconvenience of a trial in the Western District of Texas is likely to be less than it would be in Delaware. Dell has not cited anything that persuades me that expedition will vary depending upon the location of the trial. Thus, this factor slightly favors transfer.

The relative administrative difficulty due to court congestion is difficult to assess. Dell cites statistics suggesting greater court congestion in Delaware than in the Western District of Texas. (D.I. 100, ¶¶ 7-8). I do not find any of the cited statistics to be meaningful in predicting what would happen with this particular case, either in Delaware or the Western District of Texas, since the meaningful comparison involves patent cases, not civil cases in general. I would also note that, in my brief experience, "court congestion" has not caused any delay in assigning trial dates in Delaware.   I therefore believe this factor is neutral.

The "local controversy" consideration is inapplicable here. (D.I. 98, p. 19). Dell is a major employer in the Texas, but it is also a Delaware corporation. Thus, I think this factor is

neutral.

The public policy of Delaware encourages the use by Delaware corporations – such as Dell – of Delaware as a forum for the resolution of business disputes.[10]   Typically, the forum is the Delaware Court of Chancery.  More generally, though, Delaware wants corporations to incorporate in Delaware, and the taxes that corporations pay are important to Delaware's financial health.  While it is not unusual that a Delaware corporation should sue another corporation in a Delaware court, and is a factor that has some impact on the balancing, *cf. Micron Technology v. Rambus*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)("Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."), this factor significantly overlaps with why Plaintiff would have chosen Delaware as a venue in the first place, and is less significant than in *Micron* since Plaintiff is not a Delaware corporation.  I do not attribute it independent weight as a "public policy" factor.  I believe it is taken into account in the first factor.

This is not a diversity case, and thus knowledge of state law is irrelevant here.

Other than Dell's Delaware incorporation and Plaintiff's choice to sue in Delaware, there is only one conceivable factor that makes any sense as to why this case should not be transferred to Texas.  That is the concurrent litigation on the same patents and the same technology against the codefendants, who represent a significant portion of the rest of the computer manufacturing

_____

[10] The State of Delaware Division of Corporations, on its website, prominently asks, "Why Choose Delaware as Your Corporate Home?"  The answer follows: "More than 900,000 business entities have their legal home in Delaware including more than 50% of all U.S. publicly-traded companies and 63% of the Fortune 500.  Businesses choose Delaware because we provide a complete package of incorporation services including modern and flexible corporate laws, our highly-respected Court of Chancery, a business-friendly State Government, and the customer service-oriented Staff of the Delaware Division of Corporations."

-16-

industry. (D.I. 109, pp. 16-17). That litigation has not progressed at all, and thus I have no particular knowledge of the patents or the technology, but I will likely be gaining that in the near future. I believe that is a legitimate concern to factor into the analysis. *See In re Google*, 2011 WL 772875, at *2 (Fed. Cir. March 4, 2011). Certainly, if I already had some experience with the patents, it would be an important legitimate concern. *See In re Verizon Business Network Services, Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). Thus, the "co-pending litigation" weighs against transfer, but not that strongly.

I have considered *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011), but I do not think it is particularly helpful in assessing Dell's transfer request. I would characterize that case generally as standing for the proposition that when the parties, all the witnesses, and all the evidence are in one distant jurisdiction, and the only connection to Delaware is that it is the state of incorporation of the defendant, and there is no other reason for the suit to be in Delaware, the suit must be transferred, upon timely request, to the distant jurisdiction. In the present case, while the connection to Delaware is about the same, Plaintiff would be inconvenienced by transfer, as it has no connection at all to Texas and would lose the litigation efficiencies it sought to achieve by suing the collection of defendants in one forum.

Under Third Circuit law, considerable deference is given to the plaintiff's choice of forum. I think that Dell's request presents a close case, but in considering all the transfer factors identified in *Jumara*, as well as the pending litigation against the codefendants, I do not think Dell has shown that the balance of convenience tips strongly enough in its favor so that transfer should be ordered. I will therefore deny its motion to transfer.

In view of the fact that the case against Dell has been severed, but obviously has various

common questions of law and fact with the case against the other remaining defendants, I will

consolidate it for all purposes, other than having a joint trial, with the case against the rest of the

defendants, without prejudice to the defendant seeking relief from this order for any appropriate

reason.

An appropriate order will be entered.